Kevin D. Neal (Bar No. 011640)
Kenneth N. Ralston (Bar No. 034022)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
Telephone:    (602) 530-8000
Facsimile:     (602) 530-8500
kevin.neal@gknet.com
ken.ralston@gknet.com

Paul J. Napoli (*Pro Hac Vice Pending*)
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
(833) 271-4502
pnapoli@nsprlaw.com
*Attorneys for Plaintiff*

Andrew Croner (*Pro Hac Vice Pending*)
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
PLanciotti@napolilaw.com

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA**

| | |
|---|---|
| **City of Tucson,**<br>City Hall 7th Floor 255 West Alameda<br>Tucson, AZ 85701<br><br>     *Plaintiff,*<br><br>-vs-<br><br>**The United States of America,**<br>c/o Gary Restaino, U.S. Attorney,<br>U.S. Attorney's Office for the Dist. Of AZ<br>Two Renaissance Square 40 N. Central<br>Avenue Suite 1800, Phoenix, AZ 85004<br><br>     *Defendant.* | Case No. _____<br><br>**FTCA COMPLAINT**<br>**28 U.S.C. §§ 1346(B)(1) & 2674** |

**COMPLAINT AND JURY DEMAND**

Now comes Plaintiff, the City of Tucson to file this complaint under the Federal Tort

Claims Act ("FTCA") against the United States of America (hereinafter "the United States") to

recover past, present, and future damages caused by ongoing contamination of Plaintiff's drinking

water supply with per- and poly- fluoroalkyl- based substances ("PFAS") disposed of at, or otherwise released at the Davis-Monthan Air Force Base ("DMAFB") located at S Wilmot Rd, Tucson, AZ 85708. As of the date of filing of this Complaint, DMAFB has taken inadequate action to stop or mitigate the ongoing migration of its PFAS contamination into Plaintiff's water supply and any assistance (financial or otherwise) it has agreed to provide will not continue for as long as necessary.

## THE PARTIES

1. Plaintiff is an Arizona municipal corporation and political subdivision of the State of Arizona that owns and operates Tucson Water, the largest provider of drinking water for the Tucson Metropolitan Area.

2. Defendant, United States of America, owns the U.S. Department of Defense ("DOD") and its armed services branches, including the U.S. Air Force ("USAF") and DMAFB.

3. DMAFB is located S Wilmot Road, Tucson, AZ 85708. The base is best known as the location of the Air Force Materiel Command's 309th Aerospace Maintenance and Regeneration Group (309 AMARG), the aircraft boneyard for all excess military and U.S. government aircraft and aerospace vehicles.

4. Under Rule 4(i) of the Federal Rules of Civil Procedure, Defendant's address for service is the U.S. Attorney's Office for the District of Arizona, Two Renaissance Square, 40 N. Central Avenue, Suite 1800, Phoenix, AZ 85004.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction to adjudicate Defendant's violations of state tort law (as set forth in the First, Second and Third Causes of Action) by virtue of the incorporation of state law in Plaintiff's federal cause of action created by the Federal Tort Claims Act 28 U.S.C. §§ 1331, 1346(b)(1) & 2674.

6.  This Court also has subject-matter jurisdiction to adjudicate the First, Second, and Third Causes of Action, as a freestanding claims under state law that are subject to Section 313 of the Clean Water Act of 1972 (as amended), 33 U.S.C. § 1323(a), which creates federal jurisdiction to adjudicate, and waives Defendant's sovereign immunity regarding, state-law requirements pertaining to certain types of water pollution, including the requirement that damages be paid for injuries proximately caused by a breach of duty under state tort law.

7.  Under 28 U.S.C. § 1402(b), venue is proper in this Court because Plaintiff resides in this judicial district, and because the acts and omissions alleged herein occurred in this judicial district.

## DENIAL OF PLAINTIFF'S ADMINISTRATIVE FTCA DAMAGE CLAIM

8.  As required under the FTCA, implementing regulations codified at 28 C.F.R. Part 14, and 32 U.S.C. § 842.79, Plaintiff submitted an administrative FTCA damage claim and addendum on June 6, 2024, to the DOD on behalf of the U.S. Department of the Air Force Claims Service at Andrews Air Force Base, MD (Exhibit 1).

9.  Pursuant to §2675(a) of the FTCA the United States Air Force did not make a final disposition of the claim within six months after it was filed.

10. Therefore, the claim is deemed a final denial for the purposes of the FTCA's exhaustion requirement.

## GENERAL ALLEGATIONS

11. Plaintiff provides potable water to over 722,000 customers each year in the Tucson Metropolitan Area.

12. Plaintiff's water system is composed of 206 active production or standby wells, 4,600 miles of delivery pipelines, 125 boosters to move water around the delivery area, and

approximately 60 potable storage facilities capable of storing more than 305 million gallons of water.

13. Plaintiff first reported the presence of PFOS in its 2013 Annual Water Quality Report. At that time the average of PFOS found in Plaintiff's water was 28 parts per trillion ("ppt"). The same amount was reported in the 2014 and 2015 Annual Water Quality Reports. On or about January 4, 2017, Plaintiff received the results from November 30, 2016, sampling at Well C-014B, which showed a PFOS/PFOA combined level of 79 ppt.

14. On or about January 4, 2017, Well C-014B was taken off-line due to the PFOS/PFOA contamination and has remained off-line since that date. Subsequent sampling at Well C-014B showed combined levels of 133 ppt on October 12, 2017, and 97 ppt on March 20, 2018. Additional sampling conducted at Plaintiff's wells has continually shown elevated levels of PFAS.

15. Due to the contamination, Plaintiff removed almost thirty production wells from service that previously contributed to its drinking water system. Invested in specialized laboratory equipment for its state certified water quality laboratory to analyze over 1,800 samples for PFAS each year. Additionally, in June 2021 Plaintiff removed the Tucson Airport Remediation Project (TARP) from connection to the potable system.

16. To date Plaintiffs has spent a total of $71,113,717.00 on remediation costs.

17. The USAF began using PFAS-based AFFF in 1970 to extinguish fuel-based fires. Beginning in 2009, USAF followed the EPA's short-term provisional health advisory of 400 ppt for PFOA and 200 ppt for PFOS. USAF now applies the lifetime exposure health advisory of 70 ppt for both PFOA and PFOS.

10198238v1/29129-0001

18. On information and belief, USAF used aqueous firefighting foams ("AFFF") containing perfluorochemicals (PFCs) such as perfluorooctanesulfonic acid ("PFOS") and related fluorochemicals that can degrade to perfluorooctanoic acid ("PFOA") at DMAFB.

19. On information and belief, AFFF containing PFAS were used in training exercises and in emergency situations at DMAFB, in such a manner that these dangerous chemicals would be released into the environment. At any given time during its operation, USAF housed and used thousands of gallons of AFFF concentrate at DMAFB. USAF personnel conducted training exercises at DMAFB including firefighting and explosion training that used AFFF for decades.

20. On information and belief, for decades, the DOD knew firefighting foams with PFAS were dangerous but continued their use. As far back as the 1970s, studies conducted by the DOD showed that AFFF containing PFAS was toxic.

21. On information and belief, by the 1980s, animal studies conducted by the United States Air Force revealed that PFAS chemicals could pose environmental and health risks.

22. In March 2011 the DOD Materials of Emerging Regulatory Interest Team issued Risk Alert # 03-11 to all military branch environmental coordinators stating, among other things, that (a) the discharge of PFAS-containing AFFF was regulated under the federal Clean Water Act; (b) potential liability for the release of such foam needed to be weighed against the cost of disposal and resupply with alternative chemicals; (c) uncontrolled, repeated application of PFAS-containing AFFF at fire training areas could be expected to contaminate soil and groundwater, and thus such activities needed to be managed; and (d) containment, treatment, and proper disposal of foam discharges through the use of lined pits and improved wastewater treatment were recommended.

10198238v1/29129-0001

23. On information and belief, PFOA and PFOS that originated and were released from DMAFB have contaminated Plaintiff's water supply.

24. As a direct and proximate result of Defendant's acts and omission Plaintiff's wells have been contaminated with PFAS.

25. Plaintiff's damages, caused by the above contamination, include but are not limited to, investigation costs, testing and monitoring costs, costs of planning, design and installation of water treatment systems, treatment, operating and maintenance costs, infrastructure modifications, engineering fees and other related costs.

26. Defendant, as the responsible party – and not Plaintiff or its customers – should bear all past, present and future costs of addressing the above contamination.

27. Upon information and belief, Defendant is responsible, negligently, intentionally, and/or some actionable manner, for the events and happenings referred to herein, and caused and continues to cause injuries and damages legally thereby to Plaintiff, as alleged, either through Defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

## BACKGROUND ON PFAS

28. PFAS are man-made manufactured chemical compounds containing fluorine and carbon. These substances have been used for decades in the manufacture of, among other things, household and commercial products that resist heat, stains, oil, and water. These substances are not naturally occurring and must be manufactured.

10198238v1/29129-0001

29. PFAS get into the environment from industrial facilities that make or use PFAS to make other products. They also enter the environment when released from PFAS-containing consumer products during their use and disposal.

30. PFAS can remain in the environment, particularly in water, for many years. PFAS can move through soil and into groundwater or be carried in air.

31. The two most widely studied types of these substances are PFOA and PFOS.

32. PFOA and PFOS easily dissolve in water, and thus they are mobile and easily spread in the environment. PFOA and PFOS also readily contaminate soils and leach from the soil into groundwater, where they can travel significant distances.

33. PFOA and PFOS are characterized by the presence of multiple carbon- fluorine bonds, which are exceptionally strong and stable. As a result, PFOA and PFOS are thermally, chemically, and biologically stable. They resist degradation due to light water, and biological processes.

34. PFOA and PFOS have unique properties that cause them to be: (i) mobile and persistent, meaning that they readily spread into the environment where they break down very slowly; (ii) bioaccumulative and biomagnifying, meaning that they tend to accumulate in organisms and up the food chain; and (iii) toxic, meaning that they pose serious health risks to humans and animals, including cancer.

35. Bioaccumulation occurs when an organism absorbs a substance at a rate faster than the rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

10198238v1/29129-0001

36. The chemical structure of PFOA and PFOS makes them resistant to breakdown or environmental degradation. As a result, they are persistent when released into the environment. Because they do not biodegrade, PFAS are often referred to as "forever chemicals."

37. PFOA and PFOS bioaccumulate/biomagnify in numerous ways. First, they are relatively stable once ingested, so that they bioaccumulate in individual organisms for significant periods of time. Because of this stability, any newly ingested PFOA and PFOS will be added to any PFOA and PFOS already present. In humans, PFOA and PFOS remain in the body for years.

38. PFOA and PFOS get into the environment from industrial facilities that make PFOA and PFOS or use PFOA and PFOS to make other products. It also enters the environment when released from PFOA- and PFOS-containing consumer products during their use, storage, and disposal.

39. PFOA and PFOS can remain in the environment, particularly in water, for many years. PFOA and PFOS can move through soil and into groundwater, or groundwater or be carried in air.

40. Human studies show associations between PFOA and PFOS levels in blood and an increased risk of several health effects, including effects on the liver, the immune system, high cholesterol levels, increased risk of high blood pressure, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

41. These injuries can arise months or years after exposure to PFOA and/or PFOS.

42. PFOA's and PFOS's extreme persistence in the environment and its toxicity, mobility and bioaccumulation potential, pose potential adverse effects to human health and the environment.

10198238v1/29129-0001

43.     Effective July 9, 2024, the EPA designated both PFOA and PFOS as "hazardous substances" under CERCLA, based on the determination that "they may present a substantial danger to the public health or welfare or the environment when released."[1]

44.     On April 10, 2024, EPA announced enforceable levels for PFOA and PFOS in drinking water. EPA set maximum containment levels (MCLs) for PFOA and PFOS at 4.0 ppt (also expressed as ng/L).

**FIRST CLAIM FOR RELIEF:**
**(Continuing Public Nuisance)**

45.     Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

46.     Plaintiff, its residents, and businesses have the common law right to clean, safe, potable source of water of their own choosing.

47.     Plaintiff was supplying what it believed to be a clean, safe, potable source of water when it was discovered that PFAS contamination originating from DMAFB had migrated to Plaintiff's water supply at concentrations exceeding applicable federal and state drinking water standards and health advisory levels.

48.     DMAFB knew of the contamination of its groundwater with PFAS and consciously disregarded a known risk that the contamination had already migrated off-site and into Plaintiff's wells, or that such risk was imminent.

49.     DMAFB knew, consciously disregarded, or in an exercise of reckless disregard should have known, that the location of its firefighting training centers and firefighting training

---

[1] Final Rule, Designation of Perfluorooctanic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 89 Fed Reg. 39124 (May 8, 2024) (https://www.govinfo.gov/app/details/FR-2024-05-08/2024-08547).

10198238v1/29129-0001

exercises, and specifically the manner in which these activities were being carried out for decades, created a substantial risk that PFAS-containing AFFFs and residues would contaminate surface soils and sediments, stormwater runoff, and underlying groundwater, thus threatening the quality and safety of Plaintiff's drinking water supply.

50. DMAFB knew, consciously disregarded, or in an exercise of reckless disregard should have known, that contamination of Plaintiff's wells would pose a substantial risk of harm to Plaintiff and its water customers.

51. The acts and omissions of DMAFB unreasonably and significantly interfered with, and continue today to unreasonably and significantly interfere with, the common rights of Plaintiff and its residents and business, to a safe source of drinking water of their own choosing, and have caused and continue today to cause, detrimental effects on the public health, welfare, safety, comfort, and convenience of the residents and businesses, thus creating a public nuisance.

52. DMAFB has knowingly and deliberately failed to remove the PFAS contamination from the soils and groundwater underneath its property, and has knowingly and deliberately failed to take all necessary steps to stop the ongoing migration of PFAS in groundwater from DMAFB to Plaintiff's wells, thereby (a) knowingly and deliberately continuing to unreasonably and significantly interfere with the common rights of Plaintiff's residents and businesses to a safe source of drinking water of their own choosing, and (b) knowingly and deliberately continuing to cause detrimental effects on the public health, welfare, safety, comfort, and convenience of the residents and businesses, thus creating an ongoing public nuisance.

53. As a direct and proximate result of DMAFB's conduct, DMAFB is creating an ongoing public nuisance, Plaintiff has incurred substantial damages, which were presented to DMAFB in Plaintiff's administrative FTCA damage claim but denied in their entirety.

## SECOND CLAIM FOR RELIEF
**(Continuing Trespass)**

54. Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

55. Plaintiff is the owner, operator, and actual possessor of real property and improvements used for collecting drinking water.

56. Upon information and belief, DMAFB knew that PFAS contamination on its property exceeded applicable federal health advisory levels and recommended remediation guidelines at numerous locations, and that the contamination migrated through groundwater contaminating Plaintiff's real property used for collecting drinking water.

57. The acts and omissions of DMAFB in causing PFAS contamination of its own property have caused the contamination to migrate, via surface soils and sediments, stormwater runoff, and groundwater, contaminating Plaintiff's real property used for collecting drinking water, interfering with its property rights, including Plaintiff's right to full use and enjoyment of its water system for treatment and distribution to residents and businesses. These acts and omissions created a trespass on Plaintiff's property and unlawful interference with Plaintiff's property rights.

58. DMAFB has not removed the contamination from the soils on, and the groundwater running under, the property, nor has it taken any steps to stop the ongoing migration of the PFAS contamination on Plaintiff's property and into its water distribution system, thus creating an ongoing trespass against Plaintiff's property rights.

59. As a direct and proximate result of DMAFB's conduct, DMAFB is creating an ongoing trespass against Plaintiff's property, in the form of the ongoing PFAS contamination of Plaintiff's water system, Plaintiff has incurred substantial damages, which were presented to DMAFB in Plaintiff's administrative FTCA damage claim but denied in their entirety.

10198238v1/29129-0001

## THIRD CAUSE OF ACTION
### Failure to Warn

60. Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

61. Defendants breached their duty to warn Plaintiff of the likelihood of the release of hazardous substances, including but not limited to PFAS and other toxic chemicals, at and in the vicinity of Defendants' facilities, and, consequently, in the capture zone of Plaintiff's wells.

62. Upon learning of the release of hazardous substances, including but not limited to PFAS and/or products containing PFAS, and other toxic chemicals at their facilities and/or properties, Defendants owed Plaintiff a duty to timely notify and warn Plaintiff of the releases.

63. Defendants breached that duty by failing to timely notify and warn Plaintiff of the releases of hazardous substances, including but not limited to PFAS and other toxic chemicals, on and under their properties and, consequently, in the capture zone of Plaintiff's wells.

64. As a result of Defendants' breaches of their duty to warn Plaintiff, Plaintiff was forestalled from undertaking effective and immediate remedial measures, and Plaintiff has expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

65. As a direct and proximate result of Defendants' above-described failure to provide warnings Plaintiff has incurred and will continue to incur the following damages:

   a. Existing contamination of Plaintiff's wells, which may have been prevented or mitigated if timely warnings were given;

   b. Costs of additional testing and monitoring of the groundwater, aquifer system and Plaintiff's production wells for hazardous substances, including but not limited to PFAS and other toxic chemicals' contamination;

10198238v1/29129-0001

   c. Costs of investigations, risk assessment and planning mitigation measures to address the contamination by hazardous substances, including but not limited to PFAS and other toxic chemicals;

   d. Costs of treatment for hazardous substances, including but not limited to PFAS and other toxic chemicals, including design, installation and operation of GAC systems to remove PFAS to safe level of non-detect;

   e. Loss of water production capacity;

   f. Diminished consumer confidence in Plaintiff's water;

   g. Potential cost to design and install replacement wells;

   h. Attorney fees and costs; and

   i. Other compensatory damages.

66. As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of the trial.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the forgoing claims, Plaintiff, CITY OF TUCSON, requests that the Court grants Plaintiff the following relief:

1. Award Plaintiff monetary damages for the continuing trespass and continuing public nuisance caused by the contamination of Plaintiff's public water system, up to the maximum dollar amount set forth in Plaintiff's administrative FTCA damage claim.

2. Order DMAFB to reimburse Plaintiff for all of its past, present and future costs to investigate, evaluate, and measure the contamination that continues to migrate into Plaintiff's water system, including the costs of employing outside consultants and

10198238v1/29129-0001

testing labs for these tasks, up to the maximum dollar amount set forth in Plaintiff's FTCA damage claim.

3. Order DMAFB to pay for, or agree to reimburse the cost of a treatment system to be installed at Plaintiff's water treatment plant to remove PFAS from the incoming, untreated water, up to the maximum dollar amount set forth in Plaintiff's administrative damage claim.

4. To the extent permissible under the FTCA, award Plaintiff its reasonable attorney fees and legal expenses incurred in evaluating the PFAS contamination and prosecuting these FTCA claims, up to the maximum dollar amount set forth in Plaintiff's administrative FTCA damage claim; and

5. Award Plaintiff such other relief as the Court deems just and proper.

Dated: December 9, 2024

Respectfully submitted,

**GALLAGHER & KENNEDY, P.A**
*By /s/ Kevin D. Neal*
Kevin D. Neal
Kenneth N. Ralston
2575 East Camelback Road
Phoenix, AZ 85016-9225
kevin.neal@gknet.com
ken.ralston@gknet.com

**NAPOLI SHKOLNIK**
Paul J. Napoli
1302 Avenida Ponce de León
Santurce, PR 00907-3982
Tel. (833) 271-4502
Fax. (646) 843-7603
pnapoli@nsprlaw.com

Andrew W. Croner
360 Lexington Avenue, Floor 11
New York, NY 10017-6502
Tel. (212) 397-1000
acroner@napolilaw.com

*Counsel for Plaintiff*

10198238v1/29129-0001